UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re:                                            Chapter 11
                                                  Case No. 09-15478 (JMP)
**TANA SEYBERT LLC, et al.**,

         Debtors.                     (Jointly Administered)

---------------------------------------------------------x

# AFFIDAVIT OF GEORGE C. AMANN IN SUPPORT OF DEBTORS' MOTION FOR AN ORDER AUTHORIZING SALE OF CERTAIN OF THE DEBTORS' ASSETS, FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES

GEORGE C. AMANN, of full age being duly sworn according to law, upon his oath deposes and says:

1. I am the manager of Unimac Tana Seybert, LLC (the "Purchaser"), which is the purchaser under an asset purchase agreement (the "APA") with the Debtors dated September 10, 2009. The Purchaser is wholly owned by Bind-Rite/Union Graphics, LLC ("Bind-Rite"). Bind-Rite, in turn, is majority owned and controlled by Union Graphics, Inc., an entity of which I am the president. Union Graphics, Inc. the guarantor of the Purchaser's obligations under the APA.

2. The APA was zealously negotiated at arms'-length between the Purchaser and the Debtors over the course of several weeks immediately prior to the Debtors' chapter 11 filings. At all times during those negotiations, the Purchaser and the Debtors were represented by separate counsel who memorialized the parties' agreement and negotiated the terms of the APA.

3. The only connections of any kind between the Purchaser and the Debtors or their principals were fully disclosed in paragraphs 21 and 22 of the Debtors' motion seeking, among other things, approval of bidding procedures and ultimate approval of the sale of certain

46910/0001-6056808v1

assets to the Purchaser pursuant to the APA (Docket No. 9), dated September 12, 2009. At all times during the pre-petition negotiations between the Debtors and the Purchaser, and for the post-petition period within which the assets that are the subject of the APA were marketed by the Debtors, through their financial advisors, the Purchaser acted in good faith, without collusion or fraud of any kind.

4. Prior to the auction in this matter that I attended on October 14, 2009, my counsel was advised that the Debtors had received no competing bids for the Core Assets, the New York Assets or the Mailing Equipment, as each of those terms is defined the APA. My counsel was further advised that the Debtors had received competing proposals for the New Jersey Assets, also as defined in the APA. Based on discussions among the parties attending the October 14, 2009 auction, which included the Purchaser, the Debtors, and counsel for the official committee of unsecured creditors and HSBC Bank USA, N.A. ("HSBC"), the Purchaser agreed that the New Jersey Assets would be withdrawn by the Debtors from the assets being auctioned on October 14, 2009 and that those assets would be offered for sale at a later date. Based on additional discussions, primarily with HSBC which retained a right to credit bid on the New York Assets, the Purchaser agreed to increase its proposed sale price for the New York Assets by $10,000, from $13,000 to $23,000. I understand that an amended APA, memorializing all changes to the original APA agreed to at the auction, will be submitted by the Debtors for the Court's consideration and approval at the sale hearing.

5. Based on the foregoing, the Purchaser respectfully requests that the Court find that the Purchaser has acted in good faith within the meaning of Section 363(m) of the Bankruptcy Code and that the Purchaser is entitled to the protections of Sections 363(m) and 363(n) of the Bankruptcy Code. My counsel has negotiated with the Debtors' counsel a

proposed order approving the sale that incorporates those findings. I understand that order also will be submitted to the Court for consideration by the Debtors' counsel.

      6.      Finally, I am advised by counsel that, in accordance with the Court's September 25, 2009 order approving bidding procedures (Docket No. 37), the Debtors' decision to withdraw the New Jersey Assets from the auction triggered the Purchaser's entitlement to a break-up fee of $25,000 and an expense reimbursement of up to $12,500. In support of the Purchaser's request for the full $12,500 expense reimbursement, I can confirm that the Purchaser has incurred legal and related fees and expenses far in excess of that amount in connection with the due diligence and documentation of the transaction before the Court for consideration. In fact, the Purchaser has incurred legal fees in connection with this transaction totaling over $90,000. If requested by the Court or any party, the Purchaser will provide copies of invoices in redacted form to substantiate those legal fees.

                                                  */s/ George C. Amann*
                                                    GEORGE C. AMANN

Sworn and subscribed to
before me this 15th day
of October, 2009.

  */s/ Ronald A. Joy*
Ronald A. Joy
Notary Public, State of New Jersey
My commission expires October 19, 2012